## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## LITTLE ROCK DIVISION

**MICHAEL W. STEWART**                                         **PLAINTIFF**

**v.**                           **No. 4:17-CV-00619-JTR**

**NANCY A. BERRYHILL,**
**Deputy Commissioner for Operations,**
**performing the duties and functions**
**not reserved to the Commissioner**
**of Social Security Administration**                          **DEFENDANT**

## ORDER AFFIRMING THE COMMISSIONER

Michael Stewart ("Stewart") applied for social security disability benefits with an amended alleged disability onset date of March 31, 2014. (R. at 11). After a hearing, the administrative law judge ("ALJ") denied his applications. (R. at 89). The Appeals Council later denied Stewart's request for review, thereby making the ALJ's decision the final decision of the Commissioner. Stewart has requested judicial review.[1]

For the reasons stated below, this Court affirms the ALJ's decision.

## I.      The Commissioner's Decision

The ALJ found that Stewart had the severe impairments of degenerative disk disease status post cervical discectomy, left shoulder radiculitis, and chronic

_____

[1] The parties have consented in writing to the jurisdiction of this Court. (Doc. 4).

1

obstructive pulmonary disease. (R. at 78). The ALJ found that Stewart's impairments left him with the residual functional capacity ("RFC") to perform light work except that he could lift and carry up to twenty pounds occasionally and ten pounds frequently; sit for a total of six hours in an eight-hour workday; stand/walk for a total of six hours in an eight-hour workday; occasionally stoop, crouch, bend, kneel, crawl, and balance; occasionally reach overhead with the non-dominant extremity; not tolerate excessive exposure to dust, smoke, fumes, and other pulmonary irritants; and perform work that is simple, routine, and repetitive with supervision that is simple, direct, and concrete. (R. at 79). This RFC precluded Stewart from performing any of his past relevant work. (R. at 87).

The ALJ heard testimony from a vocational expert ("VE") to determine, at Step 5, if there were other jobs in the national economy that Stewart could perform. The VE testified that a hypothetical person with Stewart's age, education, work experience, and RFC could perform jobs such as production assembler or cashier II. (R. at 88–89). Accordingly, the ALJ held that Stewart was not disabled. (R. at 89).

## II. Discussion

Stewart argues that: (1) the ALJ failed to resolve an apparent conflict between the VE's testimony and the *Dictionary of Occupational Titles* ("DOT"); (2) new and material evidence contradicts the ALJ's findings and requires reversal; and (3) the

ALJ erred by rejecting limitations found by the non-examining State Agency consultants. Each of these arguments fail for the reasons stated below.

### A.  Conflict Between VE Testimony and DOT

Stewart argues that the ALJ failed to resolve a conflict between the VE's testimony and the DOT. According to Stewart, the job of cashier II does not meet the mental restriction of his RFC, because it cannot be performed by someone who is limited to routine and repetitive tasks. The Commissioner controverts the existence of such a conflict and argues that, in any case, the VE identified two jobs, the other of which Stewart does not allege is inconsistent with the DOT.

It is true that the ALJ has a responsibility to resolve any conflict between the DOT and VE testimony. *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632–33 (8th Cir. 2014). However, there is no need for the Court to determine if the alleged apparent conflict exists in this case, because, as the Commissioner observes, the VE identified "production assembler" as another job that Stewart could perform. (R. at 88–89, 142–43). Even if the Court held that the ALJ failed to resolve a conflict between the VE's testimony and the DOT concerning the job of cashier II, this would not eliminate production assembler. Accordingly, any such error regarding the cashier II job would not have been altered the ALJ's Step 5 determination that Stewart was capable of performing work as a "production assembler"; thereby

rendering any such error harmless. *Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008).

### B. New Evidence

Stewart argues that evidence submitted after the ALJ issued his decision contradicts his decision and demands reversal. This new evidence is from his treating physician, Tommy Love, M.D., who opines that: "Mr. Stewart is currently disabled and is not able to maintain employment since 2014 due to a cervical fracture operated [sic] and subsequent chronic pain syndrome. He also has adhesive capsulitis of the right shoulder." (R. at 72). Stewart also cites to a June 29, 2016 prescription for a cane, which contradicts the ALJ's conclusion that a cane was not prescribed. (R. at 86).

The Court must now decide if the record as a whole contains substantial evidence to support the ALJ's decision, even after considering the new evidence. *Browning v. Sullivan*, 958 F.2d 817, 823 (8th Cir. 1992). Just as in *Browning,* the conclusory letter from Dr. Love (which attempts to opine on the *legal question* of whether Stewart is "disabled") is not sufficient to overcome the weight of other evidence in the record. *Id.* Even a treating physician's opinion is not entitled to controlling weight if it is merely a conclusory statement. *Hamilton v. Astrue*, 518 F.3d 607, 610 (8th Cir. 2008). Dr. Love provides no reasoning or diagnostic results supporting his conclusion that Stewart is "disabled." Furthermore, while he mentions

that Stewart has adhesive capsulitis of the right shoulder, there are no other records of any such diagnosis concerning the right shoulder. In fact, Stewart specifically denied any pain or issue with his right shoulder in his testimony during the administrative hearing. (R. at 121, 135). Accordingly, this conclusory opinion from Dr. Love is entitled to little evidentiary weight and is not sufficient as to call the ALJ's decision into question.

Stewart maintains that he received a prescription for a cane based on a March 9, 2016 diagnosis of "degenerative changes at L5–S1 with associated lateral recess stenosis and left leg pain." (R. at 1328). He also argues that this prescription and numerous findings of antalgic gait contradict the ALJ's findings. (R. at 30, 1183, 1187, 1192, 1196, 1203, 1207, 1210, 1213, 1217, 1222, 1226, 1252). To the contrary, almost all of the medical records showing antalgic gait also reflect that Stewart did *not* use any assistive device to aid him in walking. (R. at 1183, 1187, 1192, 1196, 1203, 1207, 1210, 1213, 1217, 1222, 1226). Finally, in the ALJ's decision (R. at 86), he noted that, in Stewart's most recent visit to his doctor, on March 9, 2016, he had a normal gait, "with good coordination and balance." (R. at 1327). The March 9, 2016 visit remains the most recent analysis of Stewart's gait, as none of the subsequently provided medical records show any gait assessment. (R. at 10–18, 26–72).

The Appeals Council found that the evidence submitted by Stewart was not likely to change the outcome of the case and that the evidence pertained to a period after the ALJ's decision. (R. at 2). The Court agrees.

There is no evidence that the June 29, 2016 prescription for a cane relates to Stewart's condition *prior* to the ALJ's decision issued on April 15, 2016. (R. at 89). Indeed, the prescribing doctor referred only to findings from an MRI taken on June 27, 2016, rather than any prior medical records. (R. at 28, 31). New evidence related to a degeneration of an existing condition that occurred after the ALJ's decision does not warrant reversal. *Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997).

### C. State Agency Consultant Opinions

Finally, Stewart contends that the ALJ erred by giving significant weight to the opinions of the non-examining State Agency consultants but not including all the limitations found by the consultants.

The State Agency consultants found that Stewart would have reaching limitations with both extremities. (R. at 168, 192–93). The ALJ only limited Stewart's reaching with the non-dominant extremity. (R. at 79). As the Commissioner correctly observes, an ALJ need not adopt all of the limitations in an opinion. *See Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016). In this instance, the ALJ was justified in limiting Stewart's reaching with only the non-dominant extremity, since Stewart testified during the administrative hearing that he had no

trouble with his right arm. The medical record also contains no testing or diagnosis reflecting that Stewart had any trouble with his right arm, save for Dr. Love's lone reference to "adhesive capsulitis of the shoulder." A single statement that is not supported by any diagnostic or clinical findings is insufficient to support additional limitations. Thus, the ALJ was justified in finding that Stewart had reaching limitations only in his non-dominant extremity.

## III. Conclusion

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477. The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing. The Court concludes that the record as a whole contains ample evidence that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court further concludes that the ALJ's decision is not based on legal error.

It is so ordered this 9th day of January, 2019.

_____
UNITED STATES MAGISTRATE JUDGE